UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. KLUTHO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:20 CV 1862 CDP |
| ) | |
| JK POWERHOUSE LLC, et al. ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM AND ORDER**

On May 1, 2020, Plaintiff Thomas Klutho purchased a vehicle from defendant Jim Butler Imports, LLC, doing business as Jim Butler Kia, a car dealership located in Chesterfield, Missouri. Klutho alleges that on July 15 and August 31, 2020, he received "recorded voice robocall[s] from Defendants . . . which had a recorded voice advertising Defendants' car repair services."[1]  Klutho

---

[1] Amended Complaint, ECF 8 at ¶¶ 12-13.  Klutho does not specifically allege which of the defendants made the robocalls, and the relationship between the defendants is somewhat unclear: Klutho alleges that he purchased the Kia from a car dealership called "Jim Butler Kia" located in Chesterfield, MO, and that this entity's corporate registration expired in February 2019. *Id*. at ¶¶ 3-4.  Klutho alleges that this dealership's registered owners are individually-named defendants James J. Butler and Brad M. Sowers.  *Id*. at ¶ 4.  A separate corporate registration for an entity called "Jim Butler Kia," located in Fenton, MO, expired in January 2019; Klutho has also sued this entity's registered owner, defendant Jim Butler Imports, LLC.  *Id*. at ¶ 5.  Jim Butler Imports, LLC is co-owned by holding companies controlled by Butler and Sowers; Sowers also serves as its managing member.  Def.'s Memorandum in Support, ECF 16 at pg. 3.  Klutho has additionally sued defendant JK Powerhouse LLC, the registered owner of "Jim Butler Linn KIA," which shares a registered address with the "Jim Butler Kia" in Fenton, MO.  ECF 8 at ¶ 2.  Defendants allege that this entity was created in connection with a car dealership that never opened and has never operated.  ECF 16 at pg. 3 n.4.  Klutho alleges that all defendants use the telephone number which allegedly sent him the robocalls prompting this lawsuit, and all defendants have joined in the motion to dismiss.  ECF 8 at ¶ 11; ECF 16.

asserts that these robocalls were sent without his consent and without requisite opt-out notices in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq*. Klutho seeks class certification for a class of individuals who received similar robocalls from defendants; he alleges that each member of the class is entitled to statutory damages of $500.00 - $1,500.00 from defendants per violation, in addition to injunctive and other relief. 47 U.S.C. § 227(b)(3).

Defendants have moved to dismiss, or in the alternative, stay the action and compel Klutho to submit his claims to arbitration. They argue that Klutho signed a binding arbitration agreement compelling arbitration of any and all disputes arising from or related to the purchase of his vehicle. Klutho responds that the robocalls sent by defendants were not related to his vehicle purchase, and thus are not covered by the arbitration agreement. Klutho also argues that the agreement is not applicable to the defendants who did not specifically sign the contract.

Because the arbitration agreement expressly provides that the arbitrator has the "sole power to decide any claim regarding the . . . applicability, interpretation, scope and arbitrability of any issue arising out of or related to" their agreement, I will grant the motion to compel arbitration and stay the case.

## Discussion

Klutho purchased a Kia Optima from defendants' car dealership on May 1, 2020. Klutho's cellphone number is listed in the information section of the

purchase contract. Declaration of Brad Sowers, ECF 16-1. The contract contains a conspicuous arbitration agreement which states: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." *Id*. at ¶ 9 (capitalization in original). Klutho signed this provision, and immediately below his signature is an arbitration agreement which states:

> ANY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND BETWEEN THE CUSTOMER AND THE COMPANY ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY) SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, PURSUANT TO THE FOLLOWING TERMS:

*Id*. (capitalization in original). Section C of the arbitration section includes an underlined delegation provision stating: "The arbitrator shall have the sole power to decide any claim regarding the formation, validity, applicability, interpretation, scope, and arbitrability of any issue arising out of or related to this Agreement." *Id*. Klutho signed a second, identical arbitration agreement elsewhere in the contract. *Id*.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq*., "establishes a liberal federal policy favoring arbitration." *Torres v. Simpatico, Inc*., 781 F.3d 963, 968 (8th Cir. 2015) (quoting *AT&T Mobility, LLC v. Concepcion*, 563 U.S.

3

333, 339 (2011)). When ruling on a motion to compel arbitration, the Court's analysis is limited to "1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute falls within the scope of the arbitration agreement." *Id.*; *see also Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011). Valid arbitration agreements are to be "liberally construe[d] . . . resolving any doubts in favor of arbitration . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873-74 (8th Cir. 2018) (citing *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015).

The agreement at issue here includes a delegation provision, or "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Shockley*, 929 F.3d. at 1018 (citing *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. banc 2018)). Delegation provisions commit "gateway questions of arbitrability" to the deliberation of an arbitrator. *Id.* (citing *Rent-A-Ctr.,* 561 U.S. at 68). "These gateway questions may include determining the validity of the arbitration agreement itself." *Id.* To be valid and enforceable, the party seeking to compel arbitration must prove there is "clear and unmistakable evidence" that the parties intend to arbitrate questions of arbitrability. *Soars*, 563 S.W.3d at 114

(citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010)).  "A delegation provision giving an arbitrator the power to decide threshold issues of arbitrability 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id*. (citing 9 U.S.C. § 2).

The arbitration agreement is plainly "susceptible of an interpretation that covers the asserted dispute." *Parm*, 898 F.3d at 873-74.  The agreement broadly compels arbitration of "any claim, controversy, or dispute of any kind . . . arising out of or related to" the vehicle purchase.  ECF 16-1 at ¶ 9.  Klutho alleges that the robocalls he received from defendants advertised their car repair services, and that both calls were received relatively shortly after he purchased the vehicle and provided his cellphone number to defendants.  Based on Klutho's allegations concerning the subject matter and timing of the allegedly unlawful robocalls, I can reasonably conclude that his claims arose from and/or are related to his vehicle purchase, and are thus arguably subject to the disputed arbitration agreement. *Unison Co*., 789 F.3d at 818 (holding that a district court must send a claim to arbitration if the underlying factual allegations "simply touch matters covered by the arbitration provision").[2]

---

[2] Klutho incorrectly asserts that federal courts "almost uniformly" decline to submit TCPA claims to arbitration; in fact, courts routinely grant motions to compel arbitration of such claims,

Ultimately, however, it is not for this Court to decide whether Klutho's claims are arbitrable. The delegation provision in Section C of the agreement clearly and unmistakably evinces the parties' intent to arbitrate this threshold question of arbitrability. *Rent-A-Ctr.*, 561 U.S. at 69 n.1; *Soars*, 563 S.W.3d at 114. The agreement also specifically references the American Arbitration Association (AAA) rules, reflecting the parties' intent to incorporate the delegation provision contained therein. ECF 16-1 at ¶ 9; *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 45 (Mo. banc 2017).

Moreover, the parties expressly agreed that an arbitrator—not this Court— retains the exclusive jurisdiction to decide whether the agreement applies to the non-signatory defendants. To the extent Klutho argues that the non-signatories cannot enforce or compel arbitration as a matter of law, he is mistaken: Missouri state law has been interpreted to recognize that non-signatories may be subject to and enforce an arbitration agreement if the claims against the non-signatories are "integrally related to the contract containing the arbitration provision." *Sakalowski*

---

and Klutho's citations to out-of-Circuit cases ostensibly supporting a different conclusion are non-binding, factually distinguishable, and against the weight of authority in this Circuit. *See, e.g. Margulis v. HomeAdvisor, Inc.,* No. 4:19-CV-00226-SRC, 2020 WL  4673783, at *8 (E.D. Mo. Aug. 12, 2020); *Blevins v. Teletech Holdings, Inc.*, No. 19-03121-CV-S-DPR, 2019 WL 3291575, at *7 (W.D. Mo. July 22, 2019); *Schardan v. Allied Interstate, LLC*, No. 4:15CV1613 HEA, 2017 WL 513022, at *5 (E.D. Mo. Feb. 8, 2017); *Pierce v. Plains Commerce Bank*, No. 11-01222-CV-W-BP, 2012 WL 5992730, at *3 (W.D. Mo. Nov. 29, 2012).

6

*v. Metron Servs., Inc.*, No. 4:10CV02052 AGF, 2011 WL 4007982, at *3 (E.D. Mo. Sept. 8, 2011) (citing *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421 (Mo. banc 2003)).  Put differently, when "the relationship between the signatory and non-signatory defendants is sufficiently close," a non-signatory may enforce an arbitration agreement to give effect to the agreement.  *Zean v. Comcast Broadband Sec., LLC*, 322 F. Supp. 3d 913, 920 (D. Minn. 2018) (citing *CD Partners v. Grizzle*, 424 F.3d 795, 798-99 (8th Cir. 2005)).  Klutho asserts his claims against all "Defendants," and he has not made any effort to distinguish the relative fault of the signatories and non-signatories to the agreement; further, the signatory and non-signatory defendants are closely related, as they are all controlled by individual defendants Butler and Sowers.

In sum, the arbitration agreement validly entered into by Klutho and the defendants grants an arbitrator the exclusive jurisdiction to decide the threshold issues of the arbitrability of Klutho's claim and applicability of the agreement to the non-signatory defendants.  There are no remaining issues appropriate for resolution by this Court.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to compel arbitration [15] is GRANTED, and plaintiff must submit his claims to arbitration.

**IT IS FURTHER ORDERED** that this case is stayed pending completion of the arbitration.

**IT IS FURTHER ORDERED** that the Clerk of Court shall administratively close this case, subject to the right of either party to move to reopen it, if appropriate, upon completion of the arbitration.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of June, 2021.